### Carlucetti v. Dauphin Deposit Trust Company

*Paul Kunkel,* for plaintiff.

*Wickersham & Wickersham,* for defendant.

Fox, J., June 8, 1936. — We have before us, in the above stated case, an affidavit of defense in the nature of a demurrer, raising questions of law. The reasons to support the same are as follows:

"1. It (the statement) fails to set forth a proper cause of action upon which recovery may be allowed.

"2. The plaintiff's second amended statement does not aver that Querino Carluccetti expressly or impliedly authorized the loan of two thousand ($2,000) dollars from Alfonso Carluccetti to Gemma Carluccetti, the wife of Querino Carluccetti.

"3. The said amended statement of claim does not set forth any facts which would impose a liability upon the estate of Querino Carluccetti by operation of law."

We shall take up these reasons in their numerical order.

1. An examination of the plaintiff's second and last amended statement shows that it sets forth, inter alia, that Querino Carluccetti was indicted for murder and other charges in the Court of Oyer and Terminer of Dauphin County and was imprisoned in the jail thereof; that it was therefore necessary for him to have attorneys to represent and defend him in the said charge; that by reason of the helpless condition of the said Carluccetti and his enforced absence, the real estate which he owned being in charge of his wife, it became necessary for her to employ attorneys and expert medical doctors to prepare his defense, and that she borrowed for said purposes $2,000, which she paid to three lawyers and three medical doctors for the preparation of said defense. She gave her own note, marked "Exhibit B" and made a part of the statement, to a brother-in-law, Alfonso Carluccetti, the plaintiff, in the sum of $2,000, which amount the said brother-in-law loaned for the purpose of defense. On the back of

the note is the following endorsement: "This note is given for the purpose of raising the amount of the note for the defense of my husband, Querino Carluccetti charged with homicide," and as collateral security for the note the wife assigned to the brother-in-law her interest in a certain tract or piece of real estate owned by her husband, known as 575 West Chocolate Avenue, in the town of Hershey, which would accrue to her in the event of her husband's death, said exhibit being marked "Exhibit A". This exhibit further provided: "I agree that my brother-in-law shall receive from the estate of my said husband before any part thereof is paid to me, the said sum of two thousand dollars." The note is dated April 22, 1935, and the assignment is of the same date.

On July 3, 1935, the commission appointed by the court for the purpose of inquiring into the mental condition of the said Querino Carluccetti, after setting forth the circumstances, found and reported: "under these circumstances we feel that the prisoner Querino Carluccetti is mentally ill and that he is unable at the present time to make an adequate defense in Court to the charge for which he stands indicted," whereupon the report was on that day approved by the court and the prisoner committed to the Fairview Penitentiary as an insane prisoner.

The above-mentioned trust company was, on October 14, 1935, appointed guardian of Querino Carluccetti by the court of common pleas, and a demand was made by the plaintiff upon the said guardian for payment of the $2,000, with interest from April 27, 1935, which the guardian has refused to pay.

We are of the opinion that the plaintiff's statement does set forth a proper cause of action upon which a recovery may be allowed.

2. The plaintiff's statement, in section 6, sets forth that, by reason of the helpless condition of her said husband and by reason of his enforced absence, the real estate having been left in her charge, and for the purpose of his defense, she borrowed the said $2,000. Under the

averments of the plaintiff's statement, we are of the opinion that the employment of counsel and medical men for the purpose of the defense of the prisoner was a necessity for him.

In the case of Cany v. Patton, 2 Ashmead 140, 143, it is held:

"The obligation of the husband for necessaries supplied her during coverture, arises from the law regarding her as his agent for that purpose; and hence his assent is implied to all contracts of this kind, made through her during cohabitation."

In 2 C. J. 419, it is said:

"The relation of agency is normally contractual, since it generally arises from a contract, either express or implied in fact, previously entered into between the principal and the agent. In exceptional cases, however, the elements of a contract are wanting. Thus the agent may undertake to act for the principal without compensation and enter upon the undertaking; and in this event, although even as between the parties the relation of agency exists, the contractual element of consideration is wanting. So the relation may arise in certain cases by operation of law, as where an abandoned wife is invested by law with a limited power to bind her husband in contract to third persons; and in these cases none of the elements of a contract appear."

In Endlich on Rights and Liabilities of Married Women in Pa., 153, in discussing the Act of June 3, 1887, P. L. 332, the learned author said:

"But, as has been seen, neither the husband's liability for support, nor the wife's implied agency for the husband, is taken away by the Act of 1887. Hence it would seem a difficult matter for a tradesman furnishing necessaries upon the order of the wife to fail of recovery against some one. If the contract was made by the wife upon her credit, the recovery would be against her; if not distinctly upon her credit, and she can show agency for her husband, recovery may be had against him; if made by the wife

upon her husband's credit which she had no right to pledge, she would, it seems, be liable upon an implied warranty of her authority to do so."

In 32 C. J. 711 it is said:

"The estate is liable for reasonable counsel fees rendered for the protection of the ward's person or property, such services being considered necessaries."

"In a matter pertaining to the domestic economy, as this certainly was, he is chargeable with her acts on a presumption from the very nature of her functions, that she has acted by his authority and with his assent": Steele v. Thompson, 3 Penr. & W. 34, 39.

In 32 C. J. 741, it is said:

"A contract for legal service rendered to an insane person may be enforceable so far as the reasonable value of the services are worth; such services are considered as necessaries; and a promise to pay may be implied. This is especially true if the legal service is rendered to an insane person who is charged with the commission of a crime. In order to permit a recovery the services must have been actually performed; and the extent of the liability should be restricted to necessary services and reasonable fees. But the right to recover is not necessarily dependent on the success of the litigation, where the services have been faithfully and intelligently performed."

While the plaintiff's statement does not specifically aver that the said Carluccetti expressly or impliedly authorized the borrowing of $2,000, there are sufficient averments in the plaintiff's statement showing the necessity for counsel fees and medical experts for the defense of the prisoner and that the prisoner himself was in a helpless condition, from which an implied agency may be inferred. We are of the opinion that there was, therefore, an implied authority in this case for the wife, who was in charge of the personal property and real estate, to borrow the said money for the purpose of defense. This implied authority arises by law from the necessities of the case.

3. Exhibits "B" and "A," which are made a part of the plaintiff's statement, disclose that the money was borrowed by the wife for the purpose of defense of the husband and was not borrowed on the personal credit and liability of the wife, as it was admitted by both sides at the argument of the case that she had no property of any character and that the loan was being made upon the security of the said prisoner's property. This is shown clearly in Exhibit "A", wherein it is stated, at the conclusion:

"I agree that my said brother-in-law, Alfonso Carlucetti, shall receive from the estate of my said husband before any part thereof is paid to me, the said sum of Two Thousand ($2000) dollars."

Therefore we are of the opinion that the questions of law raised by the defendant in its affidavit of defense in the nature of a demurrer cannot prevail.

And now, June 8, 1936, upon due consideration, the questions of law raised by the defendant are decided against the defendant, and it is given 15 days from the date of the filing of this opinion to file an affidavit of defense to the merits of the statement.